[No. B118534. Second Dist., Div. Four. Dec. 22, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL SIMON SCHEER, Defendant and Appellant.

1012

**COUNSEL**

William M. Duncan, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Lance E. Winters and Jason C. Tran, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VOGEL (C. S.), P. J.**—Daniel Simon Scheer appeals from the judgment entered following a jury trial that resulted in his conviction of felony hit and run (Veh. Code, § 20001, subd. (a); counts 1, 2) and vehicular manslaughter (Pen. Code, § 192, subd. (c)(2); count 3) and findings, with respect to counts 1 and 2, that he had suffered a prior felony conviction which qualified as a strike under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and that he had served three prior prison terms (Pen. Code, § 667.5, subd. (b)).[1] He was sentenced to prison on count 1 for a total term of nine years, consisting of a six-year term, or double the three-year middle term, for his conviction, plus three years or one year for each prior prison term enhancement, and to county jail for one year on count 3.

Appellant contends the trial court abused its discretion by allowing evidence about the prejudicial details of his prior conviction for fleeing police officers. Alternatively, he contends his counsel was ineffective for failing to make a motion to limit the scope of cross-examination on that prior. He contends his counsel also was ineffective for failing to object to questions about car insurance and about ownership of the car he was driving when the accident occurred.

Appellant further contends the court erred in instructing the jury that he was under a duty to aid injured parties and in failing, instead, to instruct that he was absolved from such duty since others already were assisting the injured. He urges such instructional errors were prejudicial since there was insufficient evidence to establish his violation of the alternative duties to stop after the accident and to provide his name, address, and other requisite information.

Based on our review of the record and applicable law, we affirm the judgment.

We hold that the driver's duty to render assistance under Vehicle Code section 20003, at minimum, requires that the driver first ascertain what

---

[1]As noted by respondent, the abstract of judgment fails to reflect the restitution fine imposed by the court. We therefore direct the court to prepare an amended abstract of judgment to correct this omission. (See, e.g., *People* v. *Hong* (1998) 64 Cal.App.4th 1071, 1080 [76 Cal.Rptr.2d 23].)

assistance, if any, the injured person needs, and then the driver must make a reasonable effort to see that such assistance is provided, whether through himself or third parties. Such duty is not satisfied where the driver flees the scene without making any inquiry or other investigation regarding the victim.

## Factual Summary

Viewed in accordance with the usual rules on appeal (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established that on May 24, 1997, around 7:45 p.m., Gum Ja Lee was driving north on Reseda Boulevard at about 35 miles per hour when she observed appellant's car, which was proceeding west on Arminta, enter the intersection. She cried out, "Look at [that] crazy driver. Look at [that] crazy driver." There was a stop sign on Arminta but no stop sign or lights for traffic on Reseda. Appellant's attempt to cross Reseda was unsafe because of the proximity of Lee's car. Although Lee applied her brakes, the front of her car collided with the side of appellant's car, which triggered the airbags in Lee's car. Appellant's car sustained some damage to its sheet metal, and the rear wheel was thrown out of alignment. Appellant was bleeding apparently along the right side of his face, but he appeared to be alert. Lee, who was conscious, sustained injuries to her neck, chest, and fingers. Oksoon Kim, her passenger and 80-year-old mother, however, was unconscious and bleeding. Kim died from head trauma six days later without regaining consciousness.

Don Julius, one of eight individuals who gathered at the scene, approached appellant's vehicle, which was inching toward Lee's car, and asked appellant to turn off his car and stop. After appellant refused to comply, which request Julius repeated a second time, Julius reached inside and attempted to turn the ignition to the off position. Appellant, however, accelerated to more than 10 miles per hour, and Julius was dragged along for about half a block.

Julius got into his Jeep, which was then being driven by his girlfriend, and gave chase. He was joined by a van driven by another eyewitness. The chase proceeded through residential neighborhoods at speeds of up to 30 miles per hour. Although appellant's vehicle fishtailed because of the collision damage, appellant was still able to maneuver his car, which had a stick shift and a clutch, skillfully enough to make fast, albeit unsafe, turns onto three residential streets. However, after he ran a stop sign and made another turn, his car spun into a curb.

As appellant tried to get out, Julius held the car door fast and told him to stay where he was. After others arrived, Julius allowed appellant to sit on the

grass until the police arrived. Julius's opinion that appellant appeared "a little bit dazed" was based only on his statement, which was not corroborated by appellant's physical appearance.

Appellant presented an unconsciousness defense. He testified that after stopping for a stop sign at Arminta and making sure there was no cross traffic on Reseda to his left, he proceeded into the middle of the intersection where he stopped to check for traffic on his right. The next thing he recalled was a man stating, "Get out of the car. You had an accident." Appellant panicked upon discovering blood on his head. He did not know where he was. He next realized that he was lying on the grass surrounded by many people. He denied recalling the accident or his flight. He also denied having any reason to flee following the accident. He testified that never before had he suffered from a lapse of consciousness while driving. Appellant had told Julius, "I don't know what happened. That's why I didn't stop."

Ronald Markman, a psychiatrist, was not able to determine whether appellant, who suffered a one-inch cut on his scalp, had suffered a concussion. He opined, however, that a slight head injury could result in a concussion and that although the injured person could still drive an automobile, his or her state of consciousness could have been altered.

Ryan Cooper, an off-duty police officer, testified that within a minute or two after the collision, he observed someone telling appellant to pull over to the curb and heard appellant respond, "Oh, it's okay. It's okay." Appellant then fled. About 15 to 20 minutes later, Cooper identified appellant, who appeared to be conscious, coherent, and oriented.

Harold Lowder, the physician who examined appellant following the accident, opined that appellant did not suffer from a loss of consciousness or a concussion. He testified that someone who was dazed or who had lost consciousness would not have been capable of driving the distance which appellant drove, and someone who had experienced an altered state of consciousness would have crashed the car while trying to drive.

Appellant admitted he had suffered three prior felony convictions, including one for evading an officer with willful disregard for safety (Veh. Code, § 2800.2), for which he served prison sentences. On cross-examination, he admitted that during the prior pursuit he may have driven through a red light but testified that he had stopped to ensure it was safe first. He further admitted that he had driven through several intersections in a manner which caused other vehicles to brake sharply to avoid a collision. His explanation was that, based on what his passenger related, he believed the officers, who

were in an unmarked police car without any distinctive lights, were gang members.

Los Angeles Police Officer Mike Koeller testified that on May 20, 1993, around 4:15 p.m., he and his partner, who were both in uniform in an unmarked police car, attempted to effectuate a traffic stop after appellant's vehicle failed to stop at a traffic light. Officer Koeller honked his horn twice and activated the patrol light beneath the rearview mirror. When appellant failed to respond, he activated his sirens, and a five-minute pursuit ensued. During the chase through residential streets, appellant made an illegal turn and ran various stop signs and traffic lights, which unsafe conditions caused other vehicles to give way. When a black and white police car joined the pursuit, Officer Koeller backed off. Appellant was detained about two to three miles away.

## DISCUSSION

### 1. *Admission of Prior Flight Evidence Not Miscarriage of Justice*

Appellant contends the prior flight evidence was irrelevant to show either an intent or motive for fleeing the accident scene and was unduly prejudicial. We find no miscarriage of justice arose from admission of that evidence.

Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove the defendant has a criminal disposition or a bad character. (Evid. Code, § 1101, subd. (a).) On the other hand, such evidence is admissible to prove, inter alia, the defendant's motive or intent, identity, or the existence of a common plan or scheme. (Evid. Code, § 1101, subd. (b).)

Motive is not a matter whose existence the People must prove or whose nonexistence the defense must establish. (See CALJIC No. 2.51.) Nonetheless, "[p]roof of the presence of motive is material as evidence tending to refute or support the presumption of innocence." (*People* v. *Beyea* (1974) 38 Cal.App.3d 176, 194-195 [113 Cal.Rptr. 254].) A "motive" is defined as a "[c]ause or reason that moves the will and induces the action[,]" "[a]n inducement, or that which leads or tempts the mind to indulge a criminal act." (Black's Law Dict. (rev. 4th ed. 1968) p. 1164, col. 2.) Motive is an intermediate fact which may be probative of such ultimate issues as intent (see, e.g., *People* v. *Thompson* (1980) 27 Cal.3d 303, 319, fn. 23 [165 Cal.Rptr. 289, 611 P.2d 883] [intent and state of mind]), identity (see, e.g., *People* v. *Linkenauger* (1995) 32 Cal.App.4th 1603, 1610-1611 [38

Cal.Rptr.2d 868]), or commission of the criminal act itself (see, e.g., *People v. De La Plane* (1979) 88 Cal.App.3d 223, 246 [151 Cal.Rptr. 843]).

■ The relevance of uncharged misconduct to show identity, intent, or the existence of a common design or plan is determined by the nature and degree of the similarity between such misconduct and the charged crime. "Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent." (*People v. Kipp* (1998) 18 Cal.4th 349, 369 [75 Cal.Rptr.2d 716, 956 P.2d 1169].) "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 [27 Cal.Rptr.2d 646, 867 P.2d 757].) "A greater degree of similarity is required in order to prove the existence of a common design or plan." (*Ibid.*) "The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity." (*Id.* at p. 403.)

In contrast, "the intermediate fact of motive" may be established by evidence of "prior dissimilar crimes." (*People v. Thompson, supra,* 27 Cal.3d 303, 319, fn. 23.) "Similarity of offenses [is] not necessary to establish this theory of relevance" for the evident reason that the motive for the charged crime arises simply from the commission of the prior offense. (*Ibid.*) The existence of a motive requires a nexus between the prior crime and the current one, but such linkage is not dependent on comparison and weighing of the similar and dissimilar characteristics of the past and present crimes. (See, e.g., *People v. Daniels* (1991) 52 Cal.3d 815, 857 [277 Cal.Rptr. 122, 802 P.2d 906] [direct relationship between prior robbery where defendant rendered paraplegic by police and murder of officers in retribution]; *People v. De La Plane, supra,* 88 Cal.App.3d 223, 245-246 [prior robberies evidence admissible to show motive to murder witnesses].)

■ Besides relevancy to a matter other than the defendant's bad character or criminal disposition, "[t]here is an additional requirement for the admissibility of evidence of uncharged crimes: The probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury. . . . On appeal, a trial court's resolution of these issues is reviewed for abuse of discretion." (*People v. Kipp, supra,* 18 Cal.4th 349, 371, citation omitted.)

Moreover, the erroneous admission of prior misconduct evidence does not compel reversal unless a result more favorable to the defendant would have

been reasonably probable if such evidence were excluded. (See, e.g., *People* v. *Malone* (1988) 47 Cal.3d 1, 22 [252 Cal.Rptr. 525, 762 P.2d 1249]; see also *People* .v. *Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125 [36 Cal.Rptr.2d 235, 885 P.2d 1].)

■ Mindful of the foregoing principles, we first conclude the court erred in allowing evidence of the specific facts underlying appellant's prior conviction for evading officer with willful disregard for safety.

Before cross-examining appellant, the prosecutor indicated his intent to elicit evidence regarding appellant's prior flight "to show that he had the same intent and motive on this occasion as the last time." Appellant's attorney objected that such evidence was only admissible to show identity or intent, which were not at issue. Although acknowledging Vehicle Code section 20001 involved general intent, the prosecutor argued, "General intent is intent." The court ruled, "In light of the elements which must be proved under this charge, I'm going to allow the questioning."

Appellant's attorney renewed his objection when the testimony of Officer Koeller was offered as rebuttal. Without discussion, the court impliedly overruled his objection.

Pursuant to a modified version of CALJIC No. 2.50 ("Evidence of Other Crimes"), the court instructed the jury that the prior flight evidence was admitted for the limited purpose of determining: "A characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission in this case which would further tend to show a motive for the commission of the crime charged."

Initially, we find the prior flight evidence was not admissible to show intent. "Evidence of *intent* is admissible to prove that, if the defendant committed the act alleged, he or she did so with the intent that comprises an element of the charged offense." (*People* v. *Ewoldt, supra,* 7 Cal.4th 380, 394, fn. 2, italics in original.) Intent, which pertains to the defendant's state of mind, is not an element of a general intent offense. The prior flight evidence was not admissible to show appellant's intent since felony hit and run (Veh. Code, § 20001) is a general intent crime. (*People* v. *Henry* (1937) 23 Cal.App.2d 155, 156 [72 P.2d 915].)

We further find the prior flight evidence was not admissible to establish a motive. As discussed, *ante*, there must be a nexus or direct link between the commission of the prior misconduct and the charged crime. Here there is

none.[2] No relationship exists between appellant's 1993 flight from police following his failure to obey a red light and his flight from civilian eyewitnesses after a collision between his vehicle and another. The individuals involved in each accident are wholly unconnected to each other. The events themselves do not have any apparent overlapping characteristics.

Moreover, commission of the prior flight offense does not provide a motive, i.e., incentive, for appellant to commit the current crime. (Cf. *People v. Arias* (1996) 13 Cal.4th 92, 127-128 [51 Cal.Rptr.2d 770, 913 P.2d 980] [kidnapping and robbery of victim was motivated by defendant's need for money and transportation to escape apprehension for crimes committed 13 days earlier].)

We also conclude the court's modified version of CALJIC No. 2.50 reflects an incorrect fusion of two distinct concepts: motive and common plan or design. "Evidence of a common design or plan is admissible to establish that the defendant committed the *act* alleged." (*People v. Ewoldt, supra,* 7 Cal.4th 380, 394, fn. 2, italics in original.) Thus, a common design or plan, like motive, is simply an intermediate fact. Unlike motive, however, a common plan or scheme depends on the existence of striking similarities between the prior misconduct and the charged crime, and a nexus between the commission of the two is unnecessary. In other words, a common scheme or plan focuses on the manner in which the prior misconduct and the current crimes were committed, i.e., whether the defendant committed similar distinctive acts of misconduct against similar victims under similar circumstances.

The presence of the same motive in both instances may be a contributing factor in finding a common plan or design. (See, e.g., *People v. Lisenba* (1939) 14 Cal.2d 403 [94 P.2d 569] [murder of two wives, each of whom apparently drowned accidentally, motivated by desire to collect on double-indemnity insurance policy for each wife].) In contrast, the converse is not

---

[2]On cross-examination, the prosecution asked appellant "[w]hen the accident happened, didn't [he] think that as a guy who's been to prison three times, the police could blame [him] for it no matter what?" Appellant answered, "No." On appeal, appellant concedes that evidence showing he had suffered a prior conviction for fleeing police, which resulted in a prison term, was admissible and limits his claim of error to the evidence of "the underlying facts of that conviction." His concession is well founded. Service of a prison term is highly probative to show a motive to flee apprehension for the current crime, i.e., to avoid service of future additional prison time. (See, e.g., *People v. Durham* (1969) 70 Cal.2d 171, 189 [74 Cal.Rptr. 262, 449 P.2d 198] [evidence of defendant's parole status and criminal activity committed approximately three weeks before officer's murder relevant to show motive for killing]; *People v. Robillard* (1960) 55 Cal.2d 88, 100 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086] [evidence of defendant's probation status and commission of recent crimes not yet charged to him probative of motive to kill officer who detained him for investigation of driving of stolen car].)

true. The manner in which the prior misconduct was committed, which is the focus of the common plan or design inquiry, does not give rise to a motive, i.e., incentive or impetus, for commission of the charged crime. A contrary conclusion would be a non sequitur.

 We also conclude the prior flight evidence was not admissible to prove a common plan or design. Although the prior flight offense and charged crime were committed in a similar manner, i.e., appellant drove through residential areas recklessly with flagrant disregard for the safety of others, and shared the same general purpose of avoiding capture and accountability for his misdeeds, such characteristics are insufficiently probative to constitute evidence of a common plan or design. Instead, the only reasonable inference is that the prior flight and the charged crime were spontaneous events. (See, e.g., *People* v. *Sam* (1969) 71 Cal.2d 194, 205 [77 Cal.Rptr. 804, 454 P.2d 700] [apparently spontaneous unrelated past conduct by defendant (kicked former girlfriend in ribs on one occasion and kicked another person during an altercation on different occasion) inadmissible in subsequent murder case where victim stomped in stomach by defendant during altercation].)

Neither flight was a planned event. Instead, each was a spur-of-the-moment response to an unexpected event, i.e., the sudden appearance of the police in the prior instance and the attempt by volunteer bystanders to detain him after the accidental collision in the other. (Cf. *People* v. *Johnson* (1993) 15 Cal.App.4th 169, 176-177 [18 Cal.Rptr.2d 650] [prior conviction for fleeing from police by driving wrong way on surface streets admissible to show defendant's intent to drive wrong way on freeway to flee police in charged crime and to refute confusion defense].)

We conclude, however, the erroneous admission of the prior flight evidence did not result in a miscarriage of justice, which would compel reversal of appellant's convictions in counts 1 and 2 for felony hit and run. A result more favorable to appellant would not have been reasonably probable if such evidence had been excluded. The evidence of appellant's guilt was overwhelming. The record contains uncontroverted evidence establishing appellant's failure to stop; his failure to leave his name, address, and other requisite information with Lee, the conscious victim; and his failure to render reasonable assistance to the victims. The breach of any of these duties is sufficient to sustain his felony hit-and-run convictions in counts 1 and 2. (See Veh. Code, §§ 20001, subd. (a), 20003, subd. (a).)

With regard to appellant's failure to stop, the record reflects appellant may have paused momentarily following the collision but he did not "stop the

vehicle" within the meaning of Vehicle Code section 20001. He refused to comply with the repeated requests of Julius to stop where he was. Instead, he accelerated his slowly moving vehicle to more than 10 miles per hour and dragged Julius along as he drove down half a block. Appellant's actions therefore were inherently inconsistent with an intent on his part to "immediately stop the vehicle at the scene of the accident." (See, e.g., *People* v. *Ryan* (1981) 116 Cal.App.3d 168, 180-181 [171 Cal.Rptr. 854] [after hitting victim, driver paused, backed up the vehicle, and fled scene in face of witnesses' attempts to detain him].)

The record also contains ample circumstantial evidence from which the jury was entitled to infer that appellant did not provide either victim with his name and address, the vehicle's registration number, and the name and address of the vehicle's owner.[3] Following the collision, appellant did not exit his vehicle. He did not utter any words except "It's okay[,] [i]t's okay" when instructed by someone to stop his car, and there is no evidence that he wrote down the requisite information and handed the writing to anyone at the scene.

Additionally, the jury was entitled to infer appellant did not provide that information to Lee, the conscious victim, in light of his precipitous flight and the ensuing chase, which reflects an intent on the part of appellant to conceal his involvement in the collision. Disclosure of his name and other requisite information would have been inconsistent with such intent, and thus, the jury was entitled to infer such disclosure never happened.

For a contrary conclusion, appellant relies on *People* v. *Mayo* (1961) 194 Cal.App.2d 527 [15 Cal.Rptr. 366] to support his position that the jury was not entitled to infer that he did not provide the requisite information unless the prosecution first inquired of those present at the scene whether the defendant provided such information. We find his reliance on that case to be misplaced. *Mayo* concluded that "from the sum total of the evidence it may be said to be reasonably inferable that Mayo did not affirmatively leave his name and address." (*Id.* at p. 534.) *Mayo* did not, as asserted by appellant, hold or even intimate that no such inference could be drawn unless the defendant, the victim, and others present were asked if the defendant had left his name and address at the accident scene with someone there.

*Mayo* found that the prosecutor failed to establish the element of "[k]nowledge by Mayo that another car involved in the accident was

---

[3]Vehicle Code section 20003, subdivision (a), requires the requisite information be provided to "the person struck or the driver or occupants of any vehicle collided with [as well as] any traffic or police officer at the scene of the accident." Assuming that receipt of such information by a bystander from a fleeing driver would satisfy the requirement, it is sheer speculation on the part of appellant that this could have happened here.

wrecked and that some other party therein had been injured in the accident." (194 Cal.App.2d at pp. 535-536.) It was regarding this subject that *Mayo* discussed the absence of any inquiry regarding whether Mayo, who was transported by others to a hospital, had left his name and address with anyone at the scene. A positive response to such inquiry would have given rise to the inference that Mayo knew the other car, which had come to rest about 50 to 100 feet away from his after the collision, was wrecked; this, in turn, would have led to the inference that Mayo necessarily knew one victim, who was "apparently unconscious" and lying "on his back on the ground with his feet inside the car," was injured. (*Id.* at pp. 530-534.)

We also conclude abundant evidence supports the jury's implied finding that appellant did not "render reasonable aid to the person[s] injured." The uncontroverted evidence established appellant fled the scene within a minute or two of the collision without investigating the condition of the other car's occupants. As discussed, *post*, he violated his duty to "render reasonable aid" by failing to make such investigation and by failing to ensure the requisite aid was provided either by himself or others. It is undisputed that he made no attempt to ensure the victims received such aid.

Additionally, any prejudicial impact from admission of the prior flight evidence was nullified by the court's limiting instruction directing the jury that it could not consider such evidence for the purpose of finding propensity. (CALJIC No. 2.50.) The jury is presumed to have adhered to the court's instructions. (*People* v. *Pinholster* (1992) 1 Cal.4th 865, 919 [4 Cal.Rptr.2d 765, 824 P.2d 571]; *People* v. *Adcox* (1988) 47 Cal.3d 207, 253 [253 Cal.Rptr. 55, 763 P.2d 906].)

## 2. *No Ineffective Assistance of Counsel Shown*

■ Appellant contends his attorney was ineffective both for not moving to limit the scope of cross-examination about certain details of his prior conviction and for failing to object to questions about his lack of car insurance and ownership of the car he was driving when the accident occurred. We find appellant has failed to carry his burden.

■ "To establish a violation of the constitutional right to effective assistance of counsel, a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' (*Strickland* v. *Washington* (1984) 466 U.S.

668, 686 . . . ; see also *People* v. *Wader* (1993) 5 Cal.4th 610, 636 . . . .) . . . If the record contains no explanation for the challenged behavior, an appellate court will reject the claim of ineffective assistance 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' (*People* v. *Pope* (1979) 23 Cal.3d 412, 426 . . . .)" (*People* v. *Kipp, supra,* 18 Cal.4th at pp. 366-367.)

"An attorney representing a criminal defendant generally has the right to control trial tactics and strategy, despite differences of opinion or even open objections from the defendant." (*People* v. *Turner* (1992) 7 Cal.App.4th 1214, 1220 [10 Cal.Rptr.2d 358].) Decisions regarding whether to object to certain evidence or to make motions affecting evidentiary matters fall within the realm of trial tactics and strategy. (See, e.g., *People* v. *Lanphear* (1980) 26 Cal.3d 814, 828 [163 Cal.Rptr. 601, 608 P.2d 689] [objection to evidence]; accord, *People* v. *Kelly* (1992) 1 Cal.4th 495, 520 [3 Cal.Rptr.2d 677, 822 P.2d 385]; *People* v. *Beagle* (1972) 6 Cal.3d 441, 458-459 [99 Cal.Rptr. 313, 492 P.2d 1]; *People* v. *Turner, supra,* 7 Cal.App.4th 1214, 1222 [motion to suppress evidence].) Also, "[a] defense counsel is not required to make futile motions or to indulge in idle acts to appear competent." (*People* v. *Torrez* (1995) 31 Cal.App.4th 1084, 1091-1092 [37 Cal.Rptr.2d 712].) Moreover, claims that the attorney's tactics were poor or the case might have been handled more effectively are insufficient to show ineffective assistance of counsel. (See, e.g., *People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64]; accord, *People* v. *Lanphear, supra,* 26 Cal.3d at pp. 828-829.)

" ' "Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission." ' " (*People* v. *Bradford* (1997) 14 Cal.4th 1005, 1052 [60 Cal.Rptr.2d 225, 929 P.2d 544].)

 Applying these principles, we conclude the record reflects satisfactory explanations for appellant's counsel's omissions.

Initially, we conclude appellant's counsel was not ineffective for failing to object to the prior flight evidence as more prejudicial than probative. (Evid. Code, § 352.) Such objection would have been contrary to his defense strategy. The prosecutor argued the prior flight evidence was relevant to show intent and motive and that its "probative value outweighs any prejudicial effect [of showing] he is a bad guy." Appellant's counsel argued that such evidence was admissible only to show identity or intent, neither of which was an issue in this case. As a tactical decision, he may have elected

not to make a prejudice objection for the reason that it would have been inconsistent with his position that the prior flight evidence had no admissible probative value whatsoever, and thus, none to weigh against the prejudicial impact of such evidence.

We further conclude his counsel was not remiss in failing to move for exclusion from the scope of cross-examination any inquiries about the narcotics paraphernalia found during the prior flight incident. On cross-examination, after appellant denied he had a reason to flee the police that day, the prosecutor asked, "What if I tell you the police report indicates that there was a coke pipe in your car?" Appellant's awareness of the coke pipe's presence in the car would have provided a motive to evade apprehension by the police.

As discussed, *ante*, the existence of a motive to flee police in the prior flight incident does not give rise to a motive for the flight from civilian bystanders in this case. A lack of relevancy objection therefore ordinarily should have been made by appellant's counsel. However, because the court had already overruled his relevancy objection to evidence of the specific facts underlying the prior flight incident, appellant's counsel no doubt decided such an objection and a motion to exclude further inquiry along this line would have been futile.

Additionally, appellant's exculpatory responses negated any prejudicial impact from the reference to the cocaine pipe. He testified that "[i]t might have belonged to the other guy [or it] could been right there." When asked if it were not his, appellant replied, "No, it wasn't."

We also conclude appellant's counsel was not ineffective for failing to object to inquiries about car insurance and ownership of the car appellant was driving at the time of the accident. Contrary to appellant's claim, the prosecutor was not seeking through such inquiries to elicit improper evidence of poverty. (Cf. *People* v. *Wilson* (1992) 3 Cal.4th 926, 939 [13 Cal.Rptr.2d 259, 838 P.2d 1212] ["Evidence of a defendant's poverty or indebtedness generally is inadmissible to establish motive to commit robbery or theft, because reliance on poverty alone as evidence of motive is deemed unfair to the defendant, and the probative value of such evidence is considered outweighed by the risk of prejudice."].)

Instead, both subjects were highly probative of whether appellant, in this case, had a motive to flee the accident scene. On cross-examination, appellant acknowledged testifying he had no reason to flee and then added, "[n]one whatsoever." Additionally, by law, every driver of a motor vehicle is

required at all times to carry in the vehicle evidence of the requisite financial responsibility, such as proof of insurance, then in effect for the vehicle. (Veh. Code, § 16020.) The failure of a driver involved in an accident to provide such evidence at the time of the accident may result in the suspension of his or her driving privilege. (Veh. Code, § 16070.) Accordingly, inquiries about car insurance would be also highly probative of whether appellant had a motive to flee because he knew the vehicle was uninsured.

In contrast, such inquiries were not designed to elicit evidence which would be particularly prejudicial, i.e., " ' "evidence which uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues*." ' " (*People* v. *Gionis* (1995) 9 Cal.4th 1196, 1214 [40 Cal.Rptr.2d 456, 892 P.2d 1199], italics in original; accord, *People* v. *Bolin* (1998) 18 Cal.4th 297, 320 [75 Cal.Rptr.2d 412, 956 P.2d 374].) In view of these considerations, appellant's counsel no doubt concluded an objection would have been unavailing.

### 3. *No Instructional Error Shown*

■ Appellant contends the trial court committed instructional error by giving CALJIC No. 12.70 ("Felony Hit and Run") instead of instructing the jury that appellant had no duty to assist the victims because others were already providing aid. We find no error.

The record reflects appellant did not object to CALJIC No. 12.70 and did not request the proposed instruction now raised for the first time on appeal. Pursuant to CALJIC No. 12.70, the court instructed the jury in pertinent part that "[a] willful failure of a driver of any vehicle involved in an accident resulting in death or injury to another to comply with any of these duties is a violation of Vehicle Code section 20001 [felony hit and run;] . . . to immediately stop at the scene of the accident; to give his name, current residence address, registration number of the vehicle and the name and current residence of the owner of the vehicle to the person or to the driver or occupants of the other vehicle, if any . . . ; and to render reasonable assistance to a person injured."

Initially, we conclude appellant has forfeited his claims of instructional error by failing to object to CALJIC No. 12.70 and to request that the trial court give the amplifying instruction. (See, e.g., *People* v. *Lang* (1989) 49 Cal.3d 991, 1024 [264 Cal.Rptr. 386, 782 P.2d 627] [request for amplifying instruction necessary to preserve claim that otherwise correct instruction was too general or incomplete]; *People* v. *Mayo, supra,* 194 Cal.App.2d at pp. 536-537 [under facts of case, error to refuse requested instruction "to the

general effect that a defendant is not required to render assistance to other individuals where such individuals are being adequately cared for by others"].)

We further conclude the court correctly instructed the jury on the duty of appellant "to render reasonable assistance to the person injured," and that no error arose from omission of the proposed amplifying instruction that "as aid was being provided by others, appellant had no duty or obligation under the law to interpose himself and also give aid," which instruction was not supported by the evidence.

Pursuant to CALJIC No. 12.70, the court instructed the jury that a verdict of guilty could be based on appellant's failure "[t]o render reasonable assistance to a person injured." The court explained that such assistance "includ[ed] the transportation or making arrangements for the transportation of any injured person to a physician, surgeon or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or that transportation is requested by the injured person."

This instruction, which essentially tracks the language of Vehicle Code section 20003, subdivision (a), is a correct recital of the law. (See, e.g., *People* v. *Estrada* (1995) 11 Cal.4th 568, 574 [46 Cal.Rptr.2d 586, 904 P.2d 1197] [where no amplification requested, instruction based on statutory language defining crime both appropriate and sufficient].)

We have no quarrel with the proposition that the above instruction is inappropriate where such assistance by the driver is unnecessary, as in the case where paramedics have responded within moments following the accident. We disagree, however, that the driver's statutory duty to render "reasonable assistance" is nullified merely because bystanders are on the scene or offer "assistance."

As authority for the position that the offer of assistance by bystanders obviates any duty of the driver to render assistance, appellant relies on *People* v. *Scofield* (1928) 203 Cal. 703 [265 P. 914]. *Scofield*, however, is factually distinguishable. *Scofield* concluded that under the facts of that case the defendant's "assistance was not *necessary*," because the victim "was given all the assistance that could be required without the aid of the defendant." (*Id.* at pp. 708-709, italics in original.) In that case, the victim was unconscious from the time of the accident until his death a few hours later at the hospital. Immediately after the accident, the victim "was lifted from the wreck by the bystanders and was laid on the sidewalk near by." (*Id.* at p. 706.) This occurred before the defendant got out of his car and

approached the other car. "One [bystander] . . . telephone[d] and summoned an ambulance which responded and removed [the victim] to the hospital. . . . [¶] . . . [¶] . . . [T]he defendant [then] walked . . . home." (*Id.* at pp. 706-707.)

Those are not the facts here. The undisputed evidence reflects appellant fled the scene within a minute or two after the collision and made no attempt either to exit his car or to ascertain either the condition of the victims or whether any of the bystanders were in fact rendering the kind of assistance mandated by Vehicle Code section 20003.

We hold the driver's duty to render necessary assistance under Vehicle Code section 20003, at a minimum, requires that the driver first ascertain what assistance, if any, the injured person needs, and then the driver must make a reasonable effort to see that such assistance is provided, whether through himself or third parties. (See also *People* v. *Limon* (1967) 252 Cal.App.2d 575, 577-579 [60 Cal.Rptr. 448] [proffered instruction contrary to intent of law because it "might be construed by the jury to exculpate the driver if adequate first aid were administered by someone else, and nothing more were done" and inadequate because "it fails to mention [the] continuing and overriding duty of the driver to see to it that the victim is cared for until arrangements for his medical or surgical treatment are made"].)

Obviously, where, as here, the driver flees the scene without inquiring about or otherwise investigating the victims' condition, he has failed to perform the first step. (See *People* v. *De Winter* (1962) 210 Cal.App.2d 173, 174-175 [26 Cal.Rptr. 386] [while two to three bystanders inquired of victim whether he was hurt, the defendant, who stood outside his truck about twenty feet away, never approached the victim and went home after the ambulance summoned by the bystanders arrived].) Additionally, the mere presence of bystanders who arguably gathered to aid the victims does not guarantee that the injured person will receive all necessary aid. In some instances, for example, a bystander may be willing, but not physically capable, of removing the victim from the wreck, or a bystander may be willing to call for help but no phone is available yet is not willing to transport the victim to a medical facility.

In view of the foregoing, we further conclude that appellant was not entitled to an amplifying instruction to the effect that his duty to render necessary assistance was obviated because such assistance was rendered by others. The fortuitous fulfillment of the driver's duty to render reasonable assistance to the injured victim or victims by Good Samaritans cannot operate to exonerate the driver and nullify the fact such duty was breached

by the driver. To reach a contrary conclusion would impermissibly immunize the driver from the penal consequences of such breach and encourage scofflaws to violate both the letter and spirit of the law.

This disposition obviates the need to address appellant's related contentions that the assigned instructional errors were prejudicial because there was insufficient evidence to establish his violation of the alternative duties to stop after the accident and to provide his name, address, and other requisite information at the scene except to note that the sufficiency of such evidence was established, *ante*.

## DISPOSITION

The judgment is affirmed. The superior court is directed to file an amended abstract of judgment which shall reflect the $200 restitution fine.

Epstein, J., and Curry, J., concurred.