Filed 9/7/21  P. v. Santanabollas CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAVIER SANTANABOLLAS,<br><br>    Defendant and Appellant. | E075528<br><br>(Super.Ct.No. RIF1904383)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Steven G. Counelis, Judge.  Affirmed.

Melcher & Melcher and William Paul Melcher, by appointment of the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I. INTRODUCTION

Defendant Javier Santanabollas was convicted by a jury of one count of felony evading a police officer (Veh. Code, § 2800.2, count 1); one count of possession of burglary tools (Pen. Code, § 466, count 4); and one count of petty theft (Pen. Code, § 488, count 3), arising out of an October 19, 2019, incident involving a vehicle pursuit by police. In a bifurcated proceeding, defendant also admitted he suffered a prior strike offense. (Pen. Code, §§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1).) Defendant was sentenced to an aggregate term of six years in state prison, representing the aggravated term of three years, doubled for his prior strike offense in count 1 and concurrent terms of 180 days on counts 3 and 4.

On appeal, defendant argues the judgment should be reversed because (1) the trial court erred in permitting the prosecution to present evidence of two prior vehicle pursuits involving defendant pursuant to Evidence Code[1] section 1101, subdivision (b), and (2) the trial court erred in permitting the prosecution to present evidence of the convictions arising out of these prior incidents for the purpose of impeachment. We find no error in the record before us, and we affirm the judgment.

## II. FACTS & PROCEDURAL HISTORY

A. *Facts and Charges*

At approximately 4:30 a.m., on October 19, 2019, police officers with the City of Corona Police Department were dispatched to a business in order to investigate a report

---

[1] Undesignated statutory references are to the Evidence Code.

of trespassing and possible burglary. The business owner had reported seeing live surveillance footage depicting unknown individuals within the secured yard of his business and provided a description for an unidentified vehicle parked outside his business (suspect vehicle). When officers appeared at the scene, the suspect vehicle drove away, and a police pursuit was initiated. The pursuit eventually ended when the suspect vehicle collided with a wrought iron fence in front of a residential apartment complex.

As a result of this incident, defendant was charged with evading a police officer (Veh. Code, § 2800.2, count 1); possession of a stolen vehicle (Pen. Code, § 496d, subd. (a), count 2); grand theft (Pen. Code, § 487, subd. (a), count 3); and possession of burglary tools (Pen. Code, § 466, count 4). Count 1 was charged as a felony. Additionally, it was alleged that defendant had suffered a prior conviction qualifying as a strike and prior serious felony. (Pen. Code, §§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1).)

B. *Relevant Evidence at Trial*

    1. <u>Testimony of Officer B.</u>

Officer B. testified that he is a peace officer with the City of Corona Police Department and was assigned to patrol duty on October 19, 2019. He was dressed in his police uniform and was driving a police vehicle. His vehicle was painted black and white; marked with the words "Corona Police Department"; and equipped with a standard white, blue, and red emergency light bar. At approximately 4:30 a.m., Officer B. was dispatched to a business in response to a report of trespassing and a possible burglary.

3

The business owner had reported seeing live surveillance video depicting an unknown individual within the secured yard of his business premises as well the suspect vehicle parked outside. He provided police with a description of the suspect vehicle.

When Officer B. arrived at the business, he parked his vehicle approximately 75 feet away from the driveway of the business and waited for backup to arrive. After waiting for about one minute, another officer arrived at the scene. However, before Officer B. had a chance to speak with the other officer, the suspect vehicle pulled out of the driveway of the business at a high rate of speed.

As the suspect vehicle drove past Officer B.'s vehicle, Officer B. maneuvered his vehicle in order to follow and activated the vehicle's overhead emergency lights and siren. The second officer who arrived at the scene did the same with his vehicle.

Instead of yielding, the suspect vehicle turned onto another street and increased its rate of speed. As Officer B. pursued the suspect vehicle, the suspect vehicle's rate of speed continued to increase to about 70 to 80 miles an hour, despite a 40 mile-an-hour posted speed limit in the area  The vehicle also failed to stop while driving through four intersections governed by stop signs. The suspect vehicle finally came to rest when it collided with a wrought iron fence in front of a residential apartment complex, and Officer B. witnessed four occupants quickly exit the vehicle. Officer B. exited his vehicle and apprehended two of the occupants at gunpoint. The other two occupants fled on foot and were not apprehended at the time.

2.  Testimony of Officer H.

Officer H. testified he is a peace officer with the City of Corona Police Department and was assigned to patrol duty on October 19, 2019.  He was wearing his police uniform and was driving a police vehicle at the time.  His vehicle was painted black and white; marked with the words "police"; bore the seal of the City of Corona; and was equipped with a standard white, blue, and red emergency light bar.

At approximately 4:30 a.m., he was dispatched to a business in response to a report of trespassing.  The business owner had reported seeing live surveillance video depicting individuals within a secured yard on his business premises and the suspect vehicle parked outside.  When he arrived at the business, Officer H. pulled his vehicle behind a second police vehicle driven by Officer B.  Officer H. then witnessed the suspect vehicle, which matched the description reported by the business owner, exit the driveway of the business.  Both he and Officer B. maneuvered their vehicles in an attempt to stop the suspect vehicle.  Officer B. activated the emergency lights and siren of his vehicle, and Officer H. followed suit.  The suspect vehicle failed to yield, and both officers began a pursuit of the suspect vehicle.

Officer H. estimated that during the pursuit, the suspect vehicle accelerated to a speed in excess of 70 miles an hour, despite a posted speed limit of 40 miles an hour.  He also witnessed the suspect vehicle fail to stop while driving through at least two intersections governed by stop signs.  Eventually, the suspect vehicle collided with a fence in front of a residential apartment complex.  When Officer H. exited his vehicle, he assisted Officer B. with securing two women who had exited the suspect vehicle

5

following its collision with the fence. The remaining two occupants of the vehicle were not located at the time. Ultimately, one of the women apprehended at the scene of the suspect vehicle's collision identified defendant as the driver of the suspect vehicle.

### 3. Testimony Regarding Prior Uncharged Acts

Over defendant's objection, the trial court granted a motion in limine permitting the People to introduce evidence of three prior incidents in which defendant was involved in a police pursuit. The trial court concluded the evidence was admissible under section 1101, subdivision (b), for the purpose of showing intent as well as showing defendant acted in accordance with a general or common plan.[2] The trial court further concluded that such evidence was not unduly prejudicial. Ultimately, the People introduced testimony of only two of the incidents at trial.

Officer P. testified that he is employed as a peace officer with the City of Corona Police Department. On July 25, 2015, he was on duty, in full police uniform, and driving a marked police vehicle equipped with an emergency light bar, when he was alerted to the possibility of a stolen vehicle nearby. When he activated the emergency lights on his vehicle in an attempt to stop the suspected stolen vehicle, the vehicle failed to yield. As he pursued the vehicle, he observed the vehicle fail to yield for red traffic signals while

---

[2] The People also argued that the evidence was relevant for the purpose of establishing defendant's identity, but the trial court disagreed. Ultimately, the People introduced other evidence to establish defendant's identity, such as the testimony of one of the passengers in the suspect vehicle, who testified she was defendant's ex-girlfriend and identified defendant as the driver, and the business's surveillance video depicting an individual, who appeared to match defendant's description, entering the driver's side of the suspect vehicle moments before the police pursuit.

driving through multiple intersections. The vehicle drove at rates of speed estimated to be about 60 to 65 miles an hour despite a posted speed limit of 35 miles an hour. Eventually, the vehicle collided with a light pole, and defendant was arrested as the driver.

Officer R. testified he is a peace officer with the City of Corona Police Department. On December 22, 2017, he was on patrol duty, in full uniform, and driving a marked police vehicle equipped with an emergency light bar. His attention was drawn to a vehicle matching the description of a recently stolen vehicle. When he activated the emergency lights of his police vehicle to initiate a stop, the suspected stolen vehicle failed to yield. As he pursued the vehicle, it accelerated to speeds in excess of 100 miles an hour. As a result, the police pursuit was cancelled due to safety concerns. Shortly after cancelling his pursuit, Officer R. was notified the vehicle had crashed after driving off the road. Defendant had left the vehicle, but he was discovered hiding nearby and eventually admitted to being the driver of the vehicle involved in the police pursuit.

4. Impeachment Evidence

In a pre-trial motion, the People also sought permission to introduce evidence of six prior convictions for the purpose of impeachment, should defendant elect to testify in

7

his own defense.[3]  Three of the prior convictions arose out of the events of July 25, 2015, and December 22, 2017—evidence that the trial court had already permitted to be introduced pursuant to section 1101, subdivision (b).  As a result, the trial court permitted the prosecution to use these three convictions for impeachment purposes but excluded the remaining convictions.

Defendant elected to testify in his own defense and denied any involvement in the events of October 19, 2019.  Instead, defendant claimed he was with his fiancée in her mother's home the entire time.  On cross-examination, defendant admitted he had been previously convicted for evading police as a result of the events of July 25, 2015, and December 22, 2017, referenced in the testimony of Officer P. and Officer R.  Thus, only two of the three prior convictions previously held admissible by the trial court were ultimately referenced at trial.

C. *Verdict and Sentence*

The trial court granted a motion to dismiss count 2, which charged vehicle theft. The jury found defendant guilty of evading a police officer (Veh. Code, § 2800.2, count 1); possession of burglary tools (Pen. Code, § 466, count 4); and the lesser included offense of petty theft on count 3 (Pen. Code, § 488).  In a bifurcated proceeding, defendant admitted he suffered the prior strike offense as alleged.  Pen. Code, §§ 667,

---

[3]  Specifically, the People sought to introduce a 2010 conviction for burglary (Pen. Code, § 459); a 2012 conviction for making criminal threats (Pen. Code, § 422); a 2016 conviction for evading a police officer (Veh. Code, § 2800.2); a 2016 conviction for grand theft auto (Veh. Code, § 10851); a 2018 conviction for possession of a stolen vehicle (Pen. Code, § 496d); and a 2018 conviction for evading a police officer (Veh. Code, § 2800.2).

subds. (c), (e)(1), 1170.12, subd. (c)(1).)  Defendant was sentenced to an aggregate term of six years in state prison, representing the aggravated term of three years, doubled for his prior strike offense in count 1, and concurrent terms of 180 days for counts 3 and 4.

## III.  DISCUSSION

A.  *Evidence of Prior Uncharged Acts Were Properly Admitted*

On appeal, defendant asserts the trial court abused its discretion in admitting evidence of uncharged prior acts.  Specifically, defendant contends the trial court erred in concluding that evidence of the events of June 2015 and December 2017 were admissible to show intent and a common plan pursuant to section 1101, subdivision (b); and, even if admissible, the trial court erred in admitting such evidence over his objection pursuant to section 352.  We disagree.

### 1.  General Legal Principles and Standard of Review

"Evidence Code section 1101, subdivision (a) generally prohibits the admission of evidence of a prior criminal act against a criminal defendant 'when offered to prove his or her conduct on a specified occasion.'  Subdivision (b) of that section, however, provides that such evidence is admissible when relevant to prove some fact in issue, such as motive, intent, knowledge, identity, or the existence of a common design or plan." (*People v. Lindberg* (2008) 45 Cal.4th 1, 22.)

"In cases where the underlying act of the uncharged act event is a given, probative value strictly depends on the degree of similarity between the uncharged act and charged crime." (*People v. Winkler* (2020) 56 Cal.App.5th 1102, 1145.)  " 'To be relevant on the issue of identity, the uncharged crimes must be highly similar to the charged offenses. . . .

9

[¶] . . . [¶]  A lesser degree of similarity is required to establish relevance on the issue of common design or plan . . . .  [¶]  The least degree of similarity is required to establish relevance on the issue of intent.' " (*People v. Lewis* (2001) 25 Cal.4th 610, 636-637 (*Lewis*) ; see *People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403.)

"Even if evidence of the uncharged conduct is sufficiently similar to the charged crimes to be relevant for a nonpropensity purpose, the trial court must next determine whether the evidence's probative value is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*People v. Chhoun* (2021) 11 Cal.5th 1, 26 (*Chhoun*); *People v. Foster* (2010) 50 Cal.4th 1301, 1328 (*Foster*); *Lewis*, *supra*, 25 Cal.4th at p. 637 ["[T]o be admissible, such evidence ' "must not contravene other policies limiting admission, such as those contained in Evidence Code section 352." ' "].)

"On appeal, a trial court's ruling under Evidence Code sections 1101 and 352 is reviewed for abuse of discretion." (*Lewis*, *supra*, 25 Cal.4th at p. 637; see *Foster*, *supra*, 50 Cal.4th at p. 1328.)  Under this standard, " ' "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*Foster*, at p. 1329; see *Chhoun*, *supra*, 11 Cal.5th at p. 26.)

Here, the trial court permitted evidence of prior uncharged acts related to incidents that occurred in June 2015 and December 2017 for the purpose of proving intent and the existence of a common plan.  As we explain, such evidence bore sufficient similarity to be probative on these issues and was therefore admissible under section 1101,

subdivision (b).  Further, the evidence of uncharged acts in this case was not unduly prejudicial, and we find no abuse of discretion in the trial court's decision to permit such evidence over defendant's section 352 objection.

    2.  <u>The Evidence of Prior Uncharged Acts Was Probative to the Issue of Intent</u>

The prior uncharged acts were clearly probative to defendant's intent.  A violation of Vehicle Code section 2800.2 requires the prosecution to prove defendant harbored the specific "intent to evade" police.  (Veh. Code, §§ 2800.2, 2800.1; see *People v. Taylor* (2018) 19 Cal.App.5th 1195, 1203 [Section 2800.2 requires the " ' "intent to evade." ' "].)  " ' " 'We have long recognized "that if a person acts similarly in similar situations, he probably harbors the same intent in each instance" . . . .  The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution.' " ' " (*Chhoun*, *supra*, 11 Cal.5th at p. 27.)

With respect to defendant's charged offense, witnesses testified that defendant failed to yield in response to marked police vehicles despite activation of emergency lights and sirens; drove at speeds in excess of posted speed limits; disregarded posted traffic signs governing intersections; and drove his vehicle off the road, leading to a collision.  In both of the incidents admitted as uncharged acts, defendant encountered uniformed police officers driving marked police vehicles; refused to yield when the officers engaged emergency lights and sirens; drove his vehicle at speeds well in excess of posted speed limits; drove his vehicle off the road; and was apprehended only after

11

crashing his vehicle. Evidence that defendant had, on two prior occasions, failed to yield and, instead, fled in response to a marked police vehicle's activation of emergency lights and sirens gives rise to a strong inference that defendant harbored the same "intent to evade" police when he engaged in the same actions with respect to the charged offense.

On appeal, defendant now claims the probative value of such evidence was minimal because defendant's intent was "not reasonably in dispute." However, "a not guilty plea places in issue all elements of the charged crimes." (*Chhoun*, *supra*, 11 Cal.5th at p. 29.) Absent an explicit concession of guilt on an issue, the fact that the defendant chooses to focus on one element of the case in his defense does " 'not eliminate the prosecution's burden to establish [the other elements] beyond a reasonable doubt.' [Citation.] Even when other evidence is present, it remains the prosecution's burden . . .[,]" and the prosecution "has the 'right to introduce all relevant and admissible evidence toward that end.' " (*Ibid.*) Thus, contrary to defendant's contention, the mere fact that he chose to focus his defense on other aspects of the case does not reduce the probative value of evidence otherwise relevant to an essential element of the charged offense. We find no error in the trial court's conclusion that the evidence of uncharged acts here was probative to the issue of defendant's intent and, therefore, admissible under section 1101, subdivision (b).

3. The Evidence of Prior Uncharged Acts Was Probative to the Issue of Whether Defendant Acted Pursuant to a Common Plan

We also find no error in the trial court's conclusion that the evidence of uncharged acts in this case was admissible for the purpose of proving defendant acted pursuant to a

12

common plan.  Notably, separate from any "intent to evade," the prosecution was also required to prove defendant drove a vehicle with "willful or wanton disregard for the safety of persons or property" in order to prove the charged offense.  (Veh. Code, § 2800.2, subd. (a); see *People v. Weddington* (2016) 246 Cal.App.4th 468, 489 ["[D]istinction between the crimes of felony and misdemeanor evading is that in committing the felony, the pursued vehicle is driven ' "in a willful or wanton disregard for the safety of persons or property." ' "].)  Additionally, the prosecution may prove this element by presenting evidence that defendant committed three or more traffic violations while fleeing or attempting to elude a pursuing peace officer.  (Veh. Code, § 2800.2, subd. (b); *People v. Taylor* (2018) 19 Cal.App.5th 1195, 1203-1204.)  Thus, the prosecution's burden in this case included establishing that defendant engaged in specific acts, including specific types of traffic violations, while attempting to evade police.

The purpose of common plan evidence is to prove defendant engaged in a specific act, by showing that defendant acted pursuant to a common pattern or planned course of conduct in similar prior instances.  (*People v. Myers* (2014) 227 Cal.App.4th 1219, 1224 [The purpose of common plan evidence is "to prove the defendant engaged in the conduct alleged by the prosecution."]; *People v. Scheer* (1998) 68 Cal.App.4th 1009, 1020 (*Scheer*) ["Evidence of a common design or plan is admissible to establish that the defendant committed the *act* alleged."].)  While two officers provided direct testimony of defendant's various traffic violations in the commission of the charged offense, this does not render evidence of a common plan irrelevant, since one recognized purpose for

13

evidence of a common plan is to "corroborate the prosecuting witness's testimony." (*People v. Epps* (1981) 122 Cal.App.3d 691, 699.)

Here, the evidence that defendant committed identical or similar traffic violations while attempting to flee police on prior occasions permits a reasonable inference that defendant followed the same course of conduct when committing the charged offense. (*People v. Abrahamian* (2020) 45 Cal.App.5th 314, 329 ["The charged offense and uncharged acts must be 'sufficiently similar,' not identical, to be admissible to show intent or common scheme or plan."]; *People v. Merchant* (2019) 40 Cal.App.5th 1179, 1193, fn. 4 [The similarity "requires only enough common features to suggest the existence of a general pattern or scheme rather than a series of spontaneous acts."].) Notably, in all three instances, defendant reportedly drove off the road and crashed his vehicle. This commonality is particularly distinctive given that, in one instance, defendant reportedly did so even after police had abandoned pursuit, and he was no longer in sight of the pursuing officer. This common feature permits a reasonable inference that defendant intentionally causes such collisions, in wanton disregard for the safety of property, as part of a plan to divert the attention of police in order to permit him to evade capture while fleeing on foot.

Defendant argues the evidence of his prior attempts to evade police were not sufficiently probative to show he acted pursuant to a common plan, relying principally on *Scheer*, *supra*, 68 Cal.App.4th 1009. We find *Scheer* readily distinguishable. In *Scheer*, the defendant was charged with felony hit and run (Veh. Code, former § 20001, subd. (a); Stats. 1996, ch. 645, § 4.) after driving through an intersection, colliding with another

14

vehicle, and fleeing from the scene when a witness attempted to get the defendant to stop his vehicle. (*Scheer*, at pp. 1014-1015.) The Court of Appeal in *Scheer* concluded that a single prior instance of evading a police officer was not sufficiently similar to the charged offense to be admissible under Evidence Code section 1101, subdivision (b). (*Scheer*, at pp. 1019-1021) While the Court of Appeal acknowledged that both instances involved defendant driving recklessly while attempting to flee, such evidence did not give rise to a reasonable inference of a common plan. (*Ibid.*)

*Scheer* is clearly distinguishable from the facts of this case because the charged offense in *Scheer* required only proof that defendant was involved in an accident and failed to stop. (Veh. Code, former § 20001, subd. (a).) Thus, the fact that defendant reportedly drove recklessly while trying to flee the scene was not an act the prosecution needed to establish to prove the charged offense. In this context, evidence of a "common plan" involving reckless driving had no probative value because the similarities involved acts entirely ancillary and unrelated to the acts the prosecution needed to prove to establish the charged offense.

In contrast, defendant here was charged with felony evasion. As we have already explained, the very nature of this offense involves an examination of the specific acts undertaken by defendant while driving in his attempt to evade. Unlike in *Scheer*, *supra*, 68 Cal.App.4th 1009, the similarities between the charged and uncharged conduct in this case involve the very acts the prosecution was required to establish in order to prove the charged offense. Because the manner in which defendant drove his vehicle while attempting to evade police was directly at issue in this case, and the evidence of

15

uncharged acts bore significant similarity to the charged conduct in this regard, we find no error in the trial court's conclusion that the evidence of uncharged acts here was probative to the issue of whether defendant acted pursuant to a common plan.

### 4. The Evidence Was Not Unduly Prejudicial

On appeal, defendant also claims the evidence of uncharged prior acts should have been excluded as unduly prejudicial under section 352. Specifically, defendant claims he was prejudiced in that the uncharged acts evidence improperly encouraged the jury to view the evidence "simply as evidence of [defendant's] propensity."[4] We disagree.

" ' " ' " 'Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of the proponent. . . .' " ' " ' ' " ' " 'The prejudice that section 352 ' "is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations.] "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors." ' " ' " ' " (*People v. Baker* (2021) 10 Cal.5th 1044, 1089.) Generally, " '[u]ndue prejudice' refers . . . to evidence that prompts an emotional reaction against the defendant and tends to cause the trier of fact to decide the case on an improper basis." (*People v. Walker* (2006) 139 Cal.App.4th 782, 806; see *People v. Wang* (2020) 46 Cal.App.5th 1055, 1075

---

**4** Defendant also suggests the evidence of uncharged acts was more inflammatory than the evidence of his charged acts and required an undue consumption of time, but he makes these arguments in the context that any error was not harmless, instead of suggesting the trial court abused its discretion in failing to balance these factors pursuant to section 352.

[Unduly prejudicial evidence is that " ' " 'which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.' " ' "].)

Here, the evidence of prior uncharged acts was not particularly inflammatory or the type of evidence that would uniquely tend to evoke some type of emotional bias against the defendant. While not minimizing the seriousness of defendant's conduct, the prior uncharged acts here were not violent crimes, were not sexual in nature, did not involve the use of weapons, did not involve a significant intrusion into the privacy of another, did not involve particularly vulnerable victims, and did not result in serious injury or death. Instead, the prior uncharged acts consisted of numerous traffic violations. While some of these traffic violations were clearly dangerous, such acts are simply not the type of acts considered so heinous or morally repugnant that they would evoke a serious or emotional bias against defendant.

To the extent defendant argues the evidence was unduly prejudicial because the jury was tempted to consider the evidence as improper character and propensity evidence, we disagree. "As part of the section 352 prejudice analysis, courts consider whether the trial court gave a limiting instruction. A limiting instruction can ameliorate section 352 prejudice by eliminating the danger the jury could consider the evidence for an improper purpose." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 247; see *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 406 [no violation of § 1101, subd. (a), where trial court gives proper limiting instructions].) Here, the trial court explicitly instructed the jury on the limited purpose for which it could consider evidence of defendant's

17

uncharged acts, and defendant has not claimed any instructional error on appeal.

Accordingly, we are not persuaded that the challenged evidence in this case was unduly

prejudicial because the jury was encouraged to consider it for an improper purpose.

Because the uncharged acts were not of the type that would evoke an emotional

reaction and because the trial court gave a limiting instruction to the jury regarding

consideration of the evidence, we find no abuse of discretion in the trial court's decision

to admit such evidence over defendant's section 352 objection.  Further, because we

conclude the trial court did not abuse its discretion in admitting the evidence of

uncharged acts, we need not address whether such alleged error was harmless.

B. *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of Defendant's Prior Convictions*

Defendant also argues the trial court abused its discretion in admitting evidence of

three prior convictions for the purpose of impeachment.  We find no abuse of discretion

on this record.

"A witness may be impeached with any prior conduct involving moral turpitude

whether or not it resulted in a felony conviction, subject to the trial court's exercise of

discretion under Evidence Code section 352.  [Citations.]  [¶]  'The admissibility of any

past misconduct for impeachment is limited at the outset by the relevance requirement of

moral turpitude.  Beyond this, the latitude [Evidence Code] section 352 allows for

exclusion of impeachment evidence in individual cases is broad.'  [Citations.]  When

determining whether to admit a prior conviction for impeachment purposes, the court

should consider, among other factors, whether it reflects on the witness's honesty or

veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on defendant's decision to testify." (*People v. Clark* (2011) 52 Cal.4th 856, 931; see *People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 (*Mendoza*).) The trial court's decision to admit evidence of a prior conviction for the purpose of impeachment is reviewed for abuse of discretion. (*People v. Green* (1995) 34 Cal.App.4th 165, 182-183.)

Here, defendant concedes that the prior convictions at issue involved moral turpitude, the prior convictions were not remote in time, admission of the prior convictions did not prevent defendant from testifying, and the prior convictions were relevant, at least "marginally," to show defendant's veracity. Where defendant admits that almost all of the considerations relevant to the trial court's decision to admit evidence of a prior conviction weigh in favor of admission, defendant has failed to meet his burden on appeal to establish an abuse of discretion.

Defendant's sole argument appears to be that, because the prior convictions involved identical offenses, this single factor should have outweighed all the other relevant factors in the trial court's section 352 analysis. However, as this court has recognized, " '[p]rior convictions for the identical offense are not automatically excluded. "The identity or similarity of current and impeaching offenses is just one factor to be considered by the trial court in exercising its discretion." ' " (*Mendoza*, *supra*, 78 Cal.App.4th at p. 926; see *People v. Gutierrez* (2018) 28 Cal.App.5th 85, 91) Thus, defendant does not show an abuse of discretion by simply identifying one factor that

might have weighed in favor of exclusion where all of the other factors, admittedly, support the trial court's ruling.

Additionally, it is undisputed that the prior convictions at issue in this case were the result of the uncharged acts the trial court found admissible under section 1101, subdivision (b). In such circumstances, our Supreme Court has explained that the admission of evidence of defendant's convictions actually results in the reduction of any prejudicial impact to defendant. (*People v. Edwards* (2013) 57 Cal.4th 658, 722 [admission of evidence of conviction after jury has already heard evidence of underlying acts of crime under § 1101, subd. (b), reduces prejudice to defendant].) As our high court has repeatedly explained, admission of a prior conviction in this context "ensur[es] that the jury [will] not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention [will] not be diverted by having to make a separate determination whether defendant committed the other offenses." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917; see *People v. Balcom* (1994) 7 Cal.4th 414, 427.) Thus, when presented with a request to admit six prior convictions for the purpose of impeachment, it was not outside the bounds of reason for the trial court to select the three convictions that were relevant on the question of credibility but that would also serve to minimize any potential prejudice to defendant, while not allowing defendant to project a "false aura of veracity." (See *People v. Beagle* (2001) 6 Cal.3d 441, 453.)

Because it is undisputed that the prior convictions involved crimes of moral turpitude, that three of the four relevant factors weighed in favor of admission, and that

admission of the prior convictions in this context neutralized any prejudice presented by other evidence, we find no abuse of discretion warranting reversal.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:


RAMIREZ
P. J.


McKINSTER
J.