Filed 2/21/25  P. v. Riddle CA6
Opinion following rehearing
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051478 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 22CR000478) |
| v. | |
| THOMAS MICHAEL RIDDLE, | |
| Defendant and Appellant. | |

Thomas Michael Riddle appeals from his conviction on two counts of assault with a firearm.  He argues that the trial court abused its discretion in admitting evidence of uncharged misconduct.  Riddle also appeals the imposition of sentencing enhancements for personal use of a firearm, arguing that he was not given adequate notice of them, which the Attorney General concedes.

We agree that the trial court abused its discretion in admitting evidence of uncharged misconduct, but find the error to be harmless.  In addition, we accept the Attorney General's concession concerning the firearm enhancements.  Accordingly, we reverse the judgment as to the enhancements and remand.

## I. BACKGROUND

### A. The Shooting Incident

Riddle owns a ranch in a rural area near King City, which he uses for hunting expeditions.  Steven Foy owns a property adjacent to a portion of Riddle's ranch.  Riddle

and Foy do not like each other. Among other things, Riddle has accused Foy of poaching and confronted him about animals missing from the ranch. For his part, Foy has accused Riddle of discharging firearms near Foy's property, leading to several law enforcement visits to Riddle's ranch.

On January 16, 2022, after receiving a text from another neighbor suggesting possible poaching, Riddle drove to his ranch. Although he found nothing suspicious, Riddle stayed to perform maintenance work on a waterline near Foy's property. After Foy appeared, Riddle flipped off Foy. Riddle then retrieved a rifle from his jeep and fired several shots. Both Foy and his then-girlfriend Marilee Miller, who had come out of a nearby laundry room, thought that Riddle pointed his rifle at them before firing, though neither saw the shots because beforehand Foy jumped behind a tree and Miller ran to retrieve her cellphone.

During the course of this incident, both Foy and Miller called 911. Deputy Sheriff Brian Baugh responded along with two other officers. After interviewing Foy and Miller, the officers spotted Riddle approaching the front of his property and drove to meet him at the front gate. According to Deputy Baugh, Riddle was angry and appeared to be intoxicated. After a brief confrontation, Riddle opened the gate, and the officers arrested him.

### B. The Proceedings Below

#### 1. The Charges

In August 2022, approximately six months after the shooting incident, the Monterrey County district attorney filed an information charging Riddle with two counts of attempted murder (Pen. Code §§ 187, subd. (a), and 664; counts 1 and 3), two counts of assault with a firearm (*id.*, § 245, subd. (a)(2); counts 2 and 4), and single counts of shooting at an inhabited dwelling (*id.*, § 246; count 5), discharging a firearm with gross negligence (*id.*, § 246.3, subd. (a); count 6), and criminal threats (*id.,* § 422, subd. (a); count 7). (Subsequent undesignated statutory references are to the Penal Code.) The

2

attempted murder charges included allegations of personal use of firearms under section 12022.5, subdivision (a).

### 2. *The Motions in Limine*

Before trial, the prosecutor filed two motions in limine seeking permission to present evidence of uncharged misconduct, both of which the trial court granted.

#### a. The Debem Incidents

The first motion in limine concerned two incidents involving Peter Debem. The first incident arose out of a dog fight. Debem had come to Riddle's ranch to train his dogs to hunt pigs. However, Riddle's dogs attacked Debem's dogs. Debem yelled for an individual to stab one of Riddle's dogs, which upset Riddle. Armed with a gun as well as a knife, and with an antler in his hand, Riddle walked up to Debem. When Debem told Riddle to get his dogs off Debem's dogs, Riddle responded "[f]**k you motherf**ker" and swung the antler at Debem. Then Riddle said, "I'm going to kill you and beat your ass"; he pulled out his knife; and he said that he was going to kill Debem and burn his vehicle. When sheriff's deputies arrived, they found that Riddle smelled like alcohol.

The second incident occurred five days later when Debem was driving on a highway. A vehicle approached the driver's side of Debem's vehicle and swerved into it, forcing Debem onto the shoulder for a few seconds. The driver, whom Debem later identified in a photo lineup as Riddle, then pointed at Debem what Debem thought was a gun.

The prosecutor argued that the uncharged misconduct in the Debem incidents was admissible under Evidence Code section 1101, subdivision (b) as evidence of intent, which Riddle had placed in dispute by pleading not guilty to the attempted murder charges.

#### b. The FedEx Incident Motion

The second motion in limine concerned a third incident of uncharged misconduct involving two FedEx drivers who parked near the property of Riddle's wife in Gilroy.

The two drivers had parked their trucks next to each other and were transferring packages between them. Both had their uniforms and credentials with them, as well as the scanner machines that FedEx drivers typically have. Riddle approached, smelling of alcohol, slurring his words, with an unsteady gait. He asked the two drivers what they were doing. The drivers showed Riddle their credentials, but Riddle said he did not believe them and asked a passenger in his vehicle to bring his gun. When the passenger did not, Riddle went back to his vehicle and retrieved the gun himself. The drivers became afraid because of the gun and because they could see Riddle's finger over the trigger. Riddle then told the drivers they should not be there. Later, when Riddle realized that the drivers had called the police, he put the gun back in his vehicle and told his friend to drive the vehicle away. In his motion in limine, the prosecutor asserted that when the police arrived Riddle lied to them, but it does not explain how.

Here also, the prosecutor argued that the uncharged misconduct was admissible under Evidence Code section 1101, subdivision (b) to show intent.

c. The In Limine Hearing

Riddle opposed both motions in limine, and the trial court held a hearing in which it considered each motion in turn.

In granting the first motion in limine, the trial court concluded that the dog fight and the highway incidents involving Debem were "roughly similar" to the shooting incident at issue. According to the court, in the Debem incidents Riddle "conveyed a threat to kill [or] inflict great bodily injury" and thus demonstrated an intent to kill; the incidents were therefore "relevant and material to the issue of intent," which Riddle's not guilty plea "has placed in issue," and the evidence had a "strong" tendency to prove a main issue and had "greater probative value" because it was "necessary to prove essential elements of the People's case."

The trial court concluded that evidence of the FedEx incident was admissible on similar grounds (and in nearly identical language). It stated that the incident was

4

"roughly similar" to Riddle's alleged shooting at Foy and Miller. It also stated that the incident was "relevant and material to the issue of intent," which Riddle's not guilty plea "has placed in issue," and that evidence of the incident had a "strong" tendency to prove a main issue and had "great probative value" because it was "necessary to prove essential elements of the People's case."

### 3. The Trial

At trial, the prosecution's primary witnesses were Foy and Miller. Foy testified that on January 16, 2022, he saw Riddle park near the fence separating his property from Riddle's, pour a liquid on the ground, and start a fire. After a gunshot from a neighboring property, Riddle went to his vehicle, pulled out a rifle, and shot it toward the property from where the gunshot came. Riddle then flipped off Foy and pointed the rifle toward Foy. After Foy hid behind a tree, he heard two gunshots, which he thought were directed at him. After two more gunshots, Foy heard Miller ask why Riddle was pointing the rifle at her and then two more gunshots.

Miller testified similarly. She said that she was doing laundry in a building on Foy's property when she heard a gunshot. Upon exiting the building, she saw Riddle on his ranch aiming a rifle at something. Miller yelled at Riddle, asking "what the f**k he was doing." Riddle then pointed the rifle at her, and she ran to get her phone. While running, Riddle appeared to be following her with his rifle. Miller heard another gunshot, and later she saw Riddle shoot into the air, down towards the ground, and then toward the road at the front of the properties. At one point, Riddle also aimed his rifle at Miller for a "couple seconds" and aimed at Foy when he was behind the tree.

When Riddle took the stand, he gave a different account. Riddle testified that he went to his ranch on January 16, 2022 because he had received a text from a neighbor about gunshots there and suspected that someone was poaching. Finding nothing suspicious, Riddle began performing maintenance work on a waterline near Foy's property. In preparation for this work, Riddle lit a fire to clear fire ants from the area.

5

Riddle noticed that Foy was video recording him and yelling something. Riddle responded by flipping off Foy. Riddle then saw a coyote, and to protect the game on his land, he retrieved a gun from his jeep and shot at the coyote twice. Afterwards, Riddle engaged the safety on his rifle and put it under his arm because the coyote had run to a spot where there was no backdrop and to fire on the coyote Riddle would have had to fire towards Foy's property. At that point Riddle heard more shouting and saw Foy go behind a tree and Miller running, so Riddle pointed at the coyote and tried to tell them about it. Once the coyote had run to a location safe to fire upon, Riddle took three more shots. He then went to his jeep to look for the coyote.

Defense counsel also brought out a number of problems with the testimony of Foy and Miller. Through several witnesses, including Miller, counsel presented evidence that Foy was dishonest and had pressured other witnesses to give false testimony; indeed, the closest person to the shooting incident, one of Foy's tenants, testified that he did not see anything in spite of being pressured by Foy to corroborate Foy's account. Additionally, when the prosecution presented evidence of a reenactment of the shooting incident that Deputy Baugh staged with Foy and Miller, defense counsel pointed out that Riddle was about 150 feet away from Foy and Miller at the time of the incident, which was much further away than in the reenactment. Finally, on cross-examination, Deputy Baugh admitted that at a distance of 150 feet, it would be difficult for someone to tell whether a rifle was pointed at him, and Jesse Montes, a former army range master, agreed.

In addition to testimony concerning the events of January 16, 2022, the prosecution presented evidence concerning the first Debem incident (the dog fight) and the FedEx incident.[1] The prosecution also repeatedly mentioned these incidents in closing argument. Indeed, at one point, the prosecutor told the jury that the Debem and

[1] No evidence concerning the incident in which Riddle allegedly attempted to drive Debem off the road was presented because at trial Debem failed to identify Riddle as the driver, and evidence of the incident was excluded for lack of foundation.

FedEx incidents showed that Riddle "carries with him the specter of death when he approaches people about his property. . . . [B]e it his dog, be it his ranch, be it his Gilroy property, he goes into these situations, and he introduces an element of death where it did not need to be." The trial court instructed the jury that it could consider the evidence of these incidents, if proven by a preponderance of evidence, for the limited purpose of deciding whether Riddle acted with "the intent to commit the offenses alleged in this case" or had "a motive to commit the offense."

The jury acquitted Riddle of both counts of attempted murder as well as the charges for shooting at an inhabited dwelling and criminal threats, and it deadlocked on the charge for negligent discharge. However, the jury convicted Riddle of two counts of assault with a firearm, and it found true allegations concerning personal use of a firearm.

Riddle was sentenced to concurrent five-year terms on each assault conviction, consisting of the low term of two years for the assault followed by three years for the firearm enhancement. Riddle subsequently filed a timely notice of appeal.

## II. DISCUSSION

### A. Uncharged Misconduct

On appeal, Riddle challenges the admission of evidence of uncharged misconduct concerning the Debem and FedEx incidents on the ground that these incidents were not relevant to the attempted murder charges against him. Reviewing admission of this evidence for abuse of discretion (*People v. Gray* (2005) 37 Cal.4th 168, 202), we conclude that the evidence was improperly admitted because, with respect to the attempted murder charges, the Debem and FedEx incidents lacked the substantial probative value required for uncharged misconduct evidence.[2] However, we conclude

---

[2] We limit our analysis to the attempted murder charges because in his briefs Riddle has not challenged use of the incidents to prove other charges and because the Attorney General has not argued that, if admissible to prove other charges, the incidents were appropriately considered on the attempted murder charges.

7

this error was harmless because Riddle was acquitted of the attempted murder charges for which the evidence was submitted as well as three other charges, and it is improbable that the evidence affected the verdict on the two assault charges for which Riddle was convicted.

### 1. Relevant Legal Principles

Evidence of uncharged misconduct poses a grave threat of unfairness. Uncharged misconduct evidence, particularly where other crimes are involved, is inherently " ' "prejudicial." ' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 (*Ewoldt*).) Indeed, the California Supreme Court has called such evidence "the most prejudicial evidence imaginable against an accused." (*People v. Smallwood* (1986) 42 Cal.3d 415, 429, disagreed with on other grounds in *People v. Bean* (1988) 46 Cal.3d 919, 939, fn. 8.) First, evidence of uncharged misconduct creates a danger that the jury will convict the defendant " 'not because he is believed guilty of the present charge, but because he has escaped unpunished from other offenses.' " (*People v. Thompson* (1980) 27 Cal.3d 303, 317 (*Thompson*).) Second, by allowing the jury to infer that a defendant is capable of criminal conduct, uncharged misconduct evidence erodes the presumption of innocence and effectively lowers the prosecution's burden of proof. (*People v. Garceau* (1993) 6 Cal.4th 140, 186, disapproved on other grounds in *People v. Yeoman* (2003) 31 Cal.4th 93, 117; see also 1 Imwinkelreid, Uncharged Misconduct Evidence (2024) § 1:2, fn. omitted ["Evidence of uncharged misconduct strips the defendant of the presumption of innocence."].) Third, when uncharged misconduct evidence shows a propensity to engage in certain criminal conduct, it "produces an 'over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts.' " (*People v. Foster* (2010) 50 Cal.4th 1301, 1331 (*Foster*).)

The Evidence Code generally prohibits admission of evidence of a person's character or traits—including evidence of prior misconduct—to prove how a person acted on a specific occasion. (Evid. Code, § 1101, subd. (a) ["Except as provided in this

8

section and in Sections 1102, 1103, 1108 and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."].)  The Evidence Code does permit evidence of uncharged misconduct to prove matters such as intent, plan or identity besides a defendant's disposition to engage in such misconduct.  (Evid. Code, § 1101, subd. (b) ["Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."].)  However, because of the " ' "highly inflammatory" ' " and potentially prejudicial impact of uncharged misconduct evidence, the Supreme Court has long admonished that " ' "its admissibility should be scrutinized with great care." ' "  (*People v. Cage* (2015) 62 Cal.4th 256, 273; see also *Ewoldt*, *supra*, 7 Cal.4th at p. 404 ["Evidence of uncharged offenses is 'so prejudicial that its admission requires extremely careful analysis.' "]); *Thompson*, *supra*, 27 Cal.3d at p. 315, fn. omitted ["This court has repeatedly warned that the admissibility of this type of evidence must be 'scrutinized with great care.' "].)

Before admitting uncharged misconduct evidence, " ' "[a] closely reasoned analysis" ' of the pertinent factors must be undertaken.' "  (*People v. Williams* (1988) 44 Cal.3d 883, 905 (*Williams*).)  First, a trial court must determine whether the uncharged misconduct evidence is "sufficiently similar to the charged crimes to be relevant for a nonpropensity purpose."  (*People v. Chhoun* (2021) 11 Cal.5th 1, 26 (*Chhoun*).)  For example, evidence of an uncharged crime may be admitted to prove identity, common plan, or intent " ' "only if the charged and uncharged crimes are sufficiently similar to support a rational inference" on these issues.' "  (*Id*. at p. 25.)  The degree of similarity needed varies depending on the purpose for which the evidence is offered:  Proving identity requires greater similarity than proving a common plan, which in turn requires

9

greater similarity than proving intent. (*Ibid*.) However, even to be relevant for proving intent, "the uncharged [offense] must be sufficiently similar to the charged offense to support the inference that the defendant probably acted with the same intent in each instance." (*People v. Lindberg* (2008) 45 Cal.4th 1, 23 (*Lindberg*).)

Second, if uncharged misconduct evidence is relevant for a legitimate, nonpropensity purpose, the trial court must "determine whether the evidence's probative value is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*Chhoun*, *supra*, 11 Cal.5th at p. 25, quoting Evid. Code, § 352.) In making this determination, it must be recognized that " 'substantial prejudice is inherent in the case of uncharged offenses.' " (*Lindberg*, *supra*, 45 Cal.4th at p. 23.) Accordingly, the Supreme Court repeatedly has stressed that, whatever the specific facts, " 'uncharged offenses are admissible only if they have *substantial* probative value.' " (*Foster*, *supra*, 50 Cal.4th at p. 1331; see also *Ewoldt*, *supra*, 7 Cal.4th at p. 404 ["Since 'substantial prejudicial effect [is] inherent in [such] evidence,' uncharged offenses are admissible only if they have *substantial* probative value.' "]; *Thompson*, *supra*, 27 Cal.3d at p. 318 ["uncharged offenses are admissible only if they have substantial probative value," italics omitted].)

Finally, "[i]f there is any doubt" about the probative value of uncharged misconduct evidence, "the evidence should be excluded." (*Thompson*, *supra*, 27 Cal.3d at p. 318; see also *People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*) [" 'Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and ultimate fact in dispute is not clear, the evidence should be excluded." ' "]; *People v. Alcala* (1984) 36 Cal.3d 604, 631 (*Alcala*) [other-crimes evidence "is to be received with 'extreme caution,' and all doubts about its connection to the crime charged must be resolved in the accused's favor"].)

## 2.    *Admission of the Uncharged Misconduct Evidence*

In determining whether the trial court abused its discretion in admitting evidence of Riddle's uncharged misconduct, we examine not only whether the trial court acted in an arbitrary, capricious, or absurd manner, but also whether the court followed the legal principles and policies that should have guided its decision.  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 ["To determine if a court abused its discretion, we must . . . consider the 'legal principles and policies that should have guided the court's actions.' "]; see *People v. Hendrix* (2013) 214 Cal.App.4th 216, 239 (*Hendrix*).)  As explained below, we conclude that uncharged misconduct evidence in this case lacked the substantial probative value required for admission of such evidence.

### a.  The Dog Fight Incident

In the first motion in limine, the prosecutor sought permission to present evidence of the dog fight incident involving Riddle and Peter Debem in support of the attempted murder charges against Riddle.  The trial court admitted this evidence based on a "rough similarity" with the shooting charged in this case and the evidence's consequent relevance to Riddle's intent to kill in the shooting, one of the elements of the attempted murder charges.  Even assuming that this uncharged misconduct evidence was relevant for a legitimate, nonpropensity purpose, it should have been excluded from the prosecution's case in chief because it lacks substantial probative value.

When Debem came to Riddle's ranch to train his dogs, Riddle's dogs attacked Debem's dogs.  Debem yelled to another person to stab one of Riddle's dogs, which apparently upset Riddle, who was drunk at the time, and had a heated exchange with Debem.  In addition to swinging an antler at Debem, Riddle said, "I'm going to kill you and beat your ass" and later threatened to kill Debem and burn his vehicle.  Finding this incident "roughly similar" to Riddle's alleged shooting at Foy and Miller, the trial court stated that the dog fight incident "demonstrated an intent to kill," which was relevant and

11

material to the issue of intent raised by the attempted murder charges against Riddle.  The court also stated that the dog fight incident had a "strong" tendency to prove "a main issue" and "greater probative value" because it is "necessary to prove essential elements of the People's case."  The trial court concluded that the evidence would not be unduly prejudicial and therefore ruled that evidence of the dog fight incident was admissible.

In determining whether uncharged misconduct has substantial probative value, both " 'the materiality of the fact sought to be proved' " and " 'the tendency of the uncharged [misconduct evidence] to prove that fact' " are considered.  (*Lindberg*, *supra*, 45 Cal.4th at p. 23; see also *Ewoldt*, *supra*, 7 Cal.4th at p. 406 ["it is imperative that the trial court determine specifically what the proffered evidence is offered to prove, so that the probative value of the evidence can be evaluated for that purpose"].)  To satisfy the materiality requirement, the fact sought to be proved " 'must be either an ultimate fact or an intermediate fact from which such ultimate fact may be inferred.' " (*People v. Clark* (2021) 62 Cal.App.5th 939, 958 (*Clark*); see also *Thompson*, *supra*, 27 Cal.3d at p. 315, fn. 13 ["Both the identity of the perpetrator and the elements of the charged crimes are ultimate facts in a criminal case, as well as the elements of certain defenses."].) Additionally, in analyzing whether uncharged misconduct tends to prove a material fact because of its similarity to the charged offense, courts " ' "must examine the precise elements of similarity" ' " and " ' "satisfy itself that each link of the chain of inference . . . is reasonably strong." ' " (*People v. Williams* (2018) 23 Cal.App.5th 396, 419-420, italics omitted; see *Thompson*, *supra*, 27 Cal.3d at p. 316; *People v. Schader* (1969) 71 Cal.2d 761, 775 (*Schader*).)

The dog fight incident lacked substantial probative value.  The prosecution sought to use the incident to prove a material issue:  Intent to kill is an element of attempted murder, and the prosecutor sought to use the dog fight incident to prove that Riddle fired on Foy and Miller with such an intent.  However, the dog fight incident failed to satisfy the second component of substantial probative value: the tendency to prove the fact in

12

question.  The trial court concluded that the dog fight incident was probative based on two factors:  (1) Riddle"conveyed a threat to kill" during the incident, and (2) the "rough similarity" between that incident and charged offense suggested that Riddle had the same intent in both incidents.  In fact, neither tended to prove that Riddle shot at Foy and Miller with an intent to kill.

First, it is not clear that Riddle had an intent to kill during the dog fight incident.  As the trial court pointed out, during the incident, Riddle said to Debem "I'm going to kill you."  But Riddle immediately added "and beat your ass."  In addition, Riddle later said that he would "burn your vehicle."  Consequently, while Riddle certainly intended to convey a threat, it is unclear what action he intended to take, much less that he actually intended to kill Debem.  However, if it is unclear that Riddle had an intent to kill in the dog fight incident, the incident does not tend to prove that he had an intent to kill in the charged shooting.  Uncharged misconduct does not tend to prove intent that the misconduct lacked.  (See *Thompson*, *supra*, 27 Cal.3d at pp. 320-321 [concluding incident in which defendant temporarily deprived victim of a car did not tend to prove the intent to permanently deprive needed for the charged robbery offense].)  For this reason alone, the dog fight incident lacks substantial probative value.

Second, the dog fight incident lacks substantial probative value because it bears little similarity to the charged shooting.  Uncharged misconduct may be admitted to prove the defendant had the same intent in the charged offense if "there [are] ' "sufficient . . . similarities to demonstrate that in each instance the perpetrator acted with the same intent or motive." ' " (*People v. Scully* (2021) 11 Cal.5th 542, 586-587.)  When a defendant takes similar actions in similar situations, it may be inferred that the defendant's actions were "premeditated and deliberate, rather than the result of an impulsive or spontaneous reaction." (*Chhoun*, *supra*, 11 Cal.5th at p. 27.)  Similarly, where both the charged offense and the uncharged misconduct display a common modus operandi, it may be inferred that the defendant harbored the same intent in both.  (*People v. Edwards* (2013)

13

57 Cal.4th 658, 712-713; *Chhoun*, *supra*, 11 Cal.5th at p. 28; *Ewoldt*, *supra*, 7 Cal.4th at p. 402.) Here, however, there was no common modus operandi. To the contrary, the charged offenses—the attempted murders of Foy and Miller—were quite different than the dog fight incident. The dog fight was an up-close, personal encounter in which Riddle exchanged angry words with Debem, threatened Debem and swung an antler at him, but did not discharge or even point a firearm. By contrast, the charged offense was at a considerable distance: Riddle was 150 feet away from Foy and Miller. In addition, Riddle had a rifle rather than an antler, and rather than swinging the rifle at Foy and Miller, he shot the rifle multiple times. As a consequence, the trial court was able to assert only a "rough similarity" between the dog fight incident and the charged offense. In light of the many differences between the dog fight incident and the charged offense, the rough similarity found by the trial court had little tendency to show that Riddle acted with the same intent in the charged offense, the ultimate fact at issue here. For this reason as well, the dog fight incident lacked substantial probative value. (*Thompson*, *supra*, 27 Cal.3d at p. 316; *Schader*, *supra*, 71 Cal.2d at p. 775; *Clark*, 62 Cal.App.5th at p. 964.)

The Attorney General argues that the dog fight incident is sufficiently similar to the charged offense to be admitted to prove intent because in both incidents Riddle was intoxicated, used violence and threats of violence "to 'protect' what he perceived was the integrity of his property," and "reacted hostilely towards law enforcement when confronted with his actions." However, the Attorney General fails to explain how the dog fight incident tends to show that Riddle had an actual intent to kill or to inflict great bodily injury, nor how the similarities between that incident and the charged offense show that Riddle had the same intent in both. As a consequence, the Attorney General fails to provide the " ' "closely reasoned analysis" ' " required for concluding that uncharged misconduct evidence has substantial probative value and is admissible. (*Williams*, *supra*, 44 Cal.3d at p. 905; *Thompson*, *supra*, 27 Cal.3d at p. 316.)

14

In cases such as this one, it is helpful for the trial court to set forth its analysis of the probative value of uncharged misconduct. Although we presume that trial courts engage in the required analysis whether or not they expressly state it, as noted above, the Supreme Court has required exclusion of uncharged misconduct evidence if the connection between the misconduct and the charged offense is "not clear." (*Fuiava*, *supra*, 53 Cal.4th at p. 667; see *Alcala*, 36 Cal.3d at p. 631; *Thompson*, *supra*, 27 Cal.3d at p. 318.) Consequently, where, as here, a trial court does not explain why it found uncharged misconduct evidence has substantial probative value, and we cannot discern such value, we must conclude that the trial court abused its discretion in admitting that evidence.

### b. The FedEx Incident

In addition to submitting evidence concerning the dog fight incident, the prosecutor submitted evidence concerning the incident between Riddle and the two FedEx employees. Here again, we conclude that the uncharged misconduct evidence lacked substantial probative value because Riddle did not clearly have an intent to kill during the incident and the connection between the conduct and the charged offenses is unclear.

In 2021, two FedEx drivers parked their trucks near the property of Riddle's wife and began transferring packages between the vehicles. While the drivers were doing this, Riddle showed up, smelling of alcohol, and demanded to know what they were doing. The drivers showed Riddle their credentials, but Riddle said he did not believe them, went to his vehicle, and retrieved a gun. Riddle brandished the gun, with his finger over the trigger, and told the drivers they should not be there. Although the trial court rejected the prosecutor's argument that this incident was admissible as evidence of habit, it held the evidence admissible to prove intent, once again finding that the incident was "roughly similar" to the alleged shooting at Foy and Miller, the incident had a "strong" tendency to

15

prove a "main issue," and it had "greater probative value" because it was "necessary to prove essential elements of the People's case."

Here again, the Attorney General contends that the materiality requirement was satisfied because the prosecutor sought to use the FedEx incident to prove intent to kill, which is an element of the attempted murder charges and therefore a material fact. (*Clark*, *supra*, 62 Cal.App.5th at pp. 957-958.) Even assuming that is true, the probative value requirement is not satisfied because the incident had little or no tendency to prove such intent. First, as with the dog fight incident, it is not clear that Riddle had an intent to kill in the FedEx incident. While Riddle brandished a gun at the two FedEx employees, he did nothing to harm them, much less anything suggesting an intent to kill. Second, the FedEx incident was quite different from the attempted murder charges. Like the dog fight incident, the FedEx incident was an up-close, personal encounter, and while Riddle had a gun during the FedEx incident, he did not shoot or even point the gun at the FedEx employees. By contrast, as noted above, the charged murder attempts took place at a distance, and Riddle had a rifle, which he shot several time. Consequently, the trial court was able to assert only a "rough similarity" between the FedEx incident and the attempted murder charges, and in light of the significant differences between the incidents, that rough similarity had little tendency to prove that in both incidents Riddle acted with the same intent. Thus, the FedEx incident lacked substantial probative value. (*Thompson*, *supra*, 27 Cal.3d at p. 316; *Schader*, *supra*, 71 Cal.2d at p. 775; *Clark*, 62 Cal.App.5th at p. 964.)

In the trial court, the prosecutor argued that the FedEx incident showed that "Mr. Riddle is involved in instances where he is inebriated and uses firearms to threaten those he thinks are near his property more than the average person." As this argument provides no basis for inferring that Riddle shot at Foy and Miller with an intent to kill, it does not show that the FedEx incident was relevant for a permissible, non-propensity purpose with respect to the attempted murder charges. Instead, this argument uses the

16

FedEx incident to show that Riddle has a general propensity or disposition to threaten and intimidate others—which is exactly what Evidence Code section 1101, subdivision (a) forbids. (*Alcala*, *supra*, 36 Cal.3d at p. 634 ["any effort to use prior crimes for the purpose [of establishing defendant's general propensity to commit similar crimes] is expressly forbidden"].) Under section 1101, uncharged misconduct may be used only "to prove some fact . . . *other than* his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b), italics added.)

Because the FedEx incident lacked substantial probative value concerning the attempted murder charges, we conclude that the trial court abused its discretion in admitting evidence of the incident concerning those charges.

    c. <u>Motive</u>

Although the prosecutor's motion in limine did not seek to use the dog fight and FedEx incidents to prove motive, we consider whether the evidence was admissible for that purpose because the prosecutor briefly mentioned motive during the hearing on the motions, and the trial court instructed the jury that it could consider uncharged acts in determining whether Riddle had a motive to commit the charged offenses. We conclude that the incidents were inadmissible for this purpose.

Unlike an element of a crime such as intent to kill, motive is not an ultimate fact. Instead, motive is an intermediate fact that is material only to the extent that it tends to prove an ultimate fact. (*Thompson*, *supra*, 27 Cal.3d at p. 315, fn. 14.) In the trial court, the prosecutor suggested that Riddle's motive for attempting to murder Foy and Miller was to protect his property against "people who he thought were violating the territorial integrity of his property." However, the prosecutor failed to explain how this motive proves any ultimate fact and thus failed to show that evidence of the motive had substantial probative value.

In addition, even if such a motive had substantial probative value, the dog fight and FedEx incidents would not. It is well-settled that uncharged misconduct evidence "is

17

inadmissible . . . if 'merely cumulative with respect to other evidence which the People may use to prove the same issue.' " (*Alcala*, *supra*, 36 Cal.3d at pp. 631-632; see *Hendrix, supra,* 214 Cal.App.4th at p. 244.) Here, one of Riddle's neighbors testified that Riddle was very concerned about poaching and that on the day of the alleged shooting he texted Riddle concerning poachers. In addition, after being arrested, Riddle called his wife and told her that he had been accused by "poaching mother f\*\*kers." The dog fight and FedEx incidents added little, if anything, to this powerful evidence of motive. Consequently, as to motive, the incidents were cumulative, and even if motive had substantial probative value, the incidents did not.

### 3.  *Harmless Error*

Erroneous admission of uncharged misconduct evidence constitutes reversible error if there is a reasonable probability that the defendant would have obtained a more favorable result had the evidence been excluded. (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1018-1019; see also *College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 716. ["[A] 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*."].) Here, although the prosecutor sought to use the dog fight and FedEx incidents to prove that Riddle had the intent to kill required for attempted murder, Riddle's ability to contest the attempted murder charges was not impeded by admission of evidence concerning the incidents because he was acquitted of those charges. It is, of course, theoretically possible that the uncharged misconduct evidence prejudiced Riddle on other charges, especially as the trial court's instructions allowed the jury to consider the uncharged misconduct evidence with respect to "each charge." However, for the reasons below, we conclude that it is not reasonably probable that Riddle would have obtained a more favorable verdict on these charges absent admission of evidence of the Debem and FedEx incidents.

In the first place, Riddle prevailed on most of the charges against him. In addition to finding Riddle not guilty of attempted murder, the jury acquitted him of criminal

18

threats and shooting at an inhabited dwelling, and it deadlocked on negligent discharge. The only charges on which the jury found Riddle guilty were two assault charges. At oral argument Riddle was unable to offer any reason why evidence of the dog fight and FedEx incidents would have led the jury to convict him on the assault charges but not the others, and we do not see any such a reason either.

The evidence supporting the assault charges was strong. (See *People v. Beltran* (2013) 56 Cal.4th 935, 956 [examining the comparative strength of the prosecution's and defense's cases in determining whether error was harmless].) The prosecutor presented evidence from two eyewitnesses—Foy and Miller—who both testified Riddle pointed his rifle at them and fired. In addition, this evidence was corroborated by physical evidence, including the guns and ammunition in Riddle's jeep, shell casings around the burn scar near which Riddle fired as well as Riddle's testimony admitting that he set a fire (supposedly to burn fire ants), "flipped" off Foy when he saw Foy, and fired shots with his rifle from the burn scar area. By contrast, Riddle's testimony that he was shooting at a coyote was suspect and undermined by testimony that there were no ant mounds near the burn scar nor any safe backstop against which to shoot at a coyote.

Riddle points out that the sheriff did not find any bullets or bullet holes on Foy's property. However, Riddle does not point to any testimony establishing that bullets and bullet holes likely would have been found. Riddle also challenges the credibility of Foy. While these challenges are well-grounded, Foy's testimony that Riddle shot at him was corroborated by Miller whose credibility Riddle does not question.

In the trial court Riddle presented evidence casting doubt on the ability of Foy and Miller to determine that a rifle 150 feet away was aimed at them. Miller, however, did not just testify that Riddle aimed his rifle at her and at Foy. She testified that, when she ran across the yard, Riddle appeared to be following her with his rifle. Riddle has offered no reason why Miller would have been unable to tell that Riddle was tracking her with his rifle.

19

Accordingly, we conclude that the evidence that Riddle assaulted Foy and Miller was strong, and there is no reason to believe that, absent admission of the evidence concerning the dog fight and FedEx incidents, the jury would have acquitted Riddle on the assault charges or otherwise rendered more favorable verdicts.

## B. The Firearm Enhancements

Riddle also challenges the personal firearm enhancements imposed on him. In particular, he argues that the enhancements must be vacated for lack of adequate notice because they were not included in the information filed against him. The People concede this point, and we accept that concession because criminal defendants are entitled to fair notice of any basis on which the prosecution seeks to impose additional punishment. (*In Re Vaquera* (2024) 15 Cal.5th 706, 717; *People v. Anderson* (2020) 9 Cal.5th 946, 956.)

## III. DISPOSITION

The judgment is reversed with respect to the personal firearm enhancements, and the matter is remanded to the trial court with directions to resentence Riddle consistent with this opinion. In all other respects, the judgment is affirmed.

_____
BROMBERG, J.


I CONCUR:


_____
LIE, ACTING P. J.


I CONCUR IN THE JUDGMENT ONLY:


_____
WILSON, J.


*People v. Riddle*
H051478